Donald Riley COOK, Appellant,

v.

Shelley Cook WARREN, Respondent.

No. WD 50882.

Missouri Court of Appeals,
Western District.

Submitted Nov. 20, 1995.

Decided Feb. 20, 1996.

R. Michael McGinness, Platte City, for appellant.

David P. Chamberlain, Liberty, for respondent.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

SMART, Judge.

Donald Cook appeals from the denial of his motion for modification of the custody and child support provisions of a dissolution decree. He contends that the trial court erred in denying his motion for modification because: (1) a significant change in the circumstances of the children existed as a matter of law; and (2) the judgment was not supported by substantial evidence and is against the weight of the evidence. The judgment of the trial court is affirmed.

Appellant, Donald Cook ("Father") and respondent, Shelley Cook Warren ("Mother") were married on November 12, 1983. Two children were born of the marriage, Gary DeMoss Cook, born on August 4, 1984, and Adam Riley Cook, born on December 1, 1986. The marriage of the parties was dissolved on March 16, 1989. Mother was unrepresented by counsel and did not appear at the hearing. A property settlement agreement approved by the court provided for joint legal and physical custody of the two boys. There was no provision for child support to be paid by either party. The parties were to share physical custody equally, with the children staying first with Father. Mother was to become the primary physical custodian "when the parties' oldest child begins attending school ... provided that Respondent resides within the Smithville School District and has a residence of her own."[1] The

---

1. The record shows that at the time of the dissolution, Father resided in Edgerton and Mother resided in North Kansas City with her mother. Father and Mother were in agreement that a more rural environment was preferable to the big city for raising the children. Mother intended to move to Smithville as soon as she could find a suitable home she could afford, a project

oldest child, Gary, was 4½ at the time of the dissolution, and was expected to enter school within six months, in September, 1989.

The children resided in Edgerton, Missouri, with Father after the dissolution, but had regular visits with Mother. Mother worked part time at several places, but earned very little. She testified that she had believed the terms of the property settlement agreement precluded her from asserting her claim for custody until she acquired "a residence of her own" in Smithville. She also believed Father was doing an acceptable job of providing a home for the boys. In 1994, Mother married James Warren. In late October, 1994, Father filed a motion to obtain sole physical custody of the children. Mother and James Warren moved to Smithville shortly thereafter on December 1, 1994. She demanded primary physical custody of the children.

Father had also remarried by this time. Before Father's remarriage, Mother had no major complaints with Father's care of the children. After the marriage, as time went by, Father began to limit Mother's access to the children. By mid 1994, Father had limited Mother's previously agreed weekend visitation to every other weekend. Father also attempted to prohibit Mother's access to the children by telephone. Mother's messages were not passed on, and her calls were curtailed by Father. Moreover, Father changed his telephone number and did not provide Mother with the new number. Mother was unable to contact the children for approximately two weeks. In addition to limiting access to the children, Father ceased forwarding the children's report cards to Mother and ceased informing her of dates of parent-teacher conferences as had been his practice in the past. Although both children had been doing well in school, the school performance of the oldest child, Gary, began to deteriorate.

Father's motion to modify, filed on October 28, 1994, sought sole physical custody of Gary and Adam. He alleged that there had been a change in circumstances since the

date of the dissolution decree in that the terms of the decree had never been complied with, that the children wished to remain with him, and that he had remarried. He also asked the court to order that Mother pay child support. Mother asked the court to deny Father's motion to modify, and to modify the decree to provide for child support.

After a hearing, held on February 8, 1995, the trial court denied Father's motion, holding:

No facts have arisen since the dissolution decree was entered which show a change in circumstances of the children. The decree therefore providing for joint custody to the parties and that Respondent mother shall be the primary custodian is to remain as provided. Factually however, the children will move to Smithville from the Respondent father's home.

The trial court regarded several provisions in the decree as unjust, including the provision requiring that Mother live in the Smithville School District in a residence of her own. The trial court ordered those provisions stricken. That portion of the court's order is not appealed. The court found that Father had "financially intimidated" Mother by these requirements. The court made an award of child support, requiring that Father pay a total of $570.00 per month. Father also does not appeal that portion of the trial court's order.

### Standard of Review

Modification of a prior decree of custody depends upon proof of facts showing that a change of circumstances has occurred since the prior decree in the circumstance of the child or the child's custodian. *Lee v. Lee,* 767 S.W.2d 373, 375 (Mo.App.1989). The moving party has the burden of showing such a change in circumstances which has occurred since the original award of custody sufficient to justify a transfer of custody. *L.S.S. v. P.A.S.,* 700 S.W.2d 517, 518 (Mo. App.1985). The standard is codified in § 452.410, RSMo 1994 [2] which states, in pertinent part:

---

which, according to the testimony, proved more difficult than she had anticipated.

**2.** All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

[T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

■ Review of this court tried case is governed by the oft-cited principles found in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Id.* The trial court has broad discretion in making provision for child custody and this court will not interfere with the trial court's decree unless the welfare of the children compels such interference. *P.L.W. v. T.R.W.*, 890 S.W.2d 688, 690 (Mo.App.1994). The trial court is in a much better position to judge the credibility of the witnesses, their sincerity, character, and other intangibles which are not readily apparent from the record, and it is presumed that the court has studied all of the evidence and decided the custody issue in a manner consistent with the best interest of the child. *Id.* Greater deference is accorded the decision of the trial court in custody cases than in other cases. *Johnson v. Johnson*, 839 S.W.2d 714, 717 (Mo.App.1992).

### Modification

■ Father presents two points on appeal, arguing that the trial court erred in denying his motion for modification because: (1) a significant change in the circumstances of the children existed as a matter of law; and (2) the judgment was not supported by substantial evidence and is against the weight of the evidence. Both of Father's points will be considered together.

■ Father has been serving as the *de facto* primary physical custodian of the children while the decree contemplated that Mother would serve as the primary physical custodian. Father contends there has been a substantial and continuing change of circumstances. He approaches the case as though the burden is on him to show a change of circumstances, even though he has been the *de facto* primary custodian. But whether we employ his approach or use a different analysis, the result is the same because the key factor, under the facts of this case, is the issue of what disposition serves the best interests of the children. The failure of the parties to carry out the provisions of the dissolution decree as to custody is not necessarily a change of circumstances. The trial court did not regard the failure as a change, concluding that Mother believed she had to secure a residence of "her own" in Smithville before she was legally entitled to insist that the children reside in her home. The contention that their young children prefer to live with father, even if true, does not constitute a change of circumstances, nor does the fact of Father's remarriage, especially given the fact that Father's conduct after his remarriage became more restrictive toward Mother's involvement with the children.

However, whether or not a change in circumstances had occurred, the evidence in this case does not require that we reverse the trial court. Section 452.410 deals not only with a change "in the circumstances of the child or his custodian" but also deals with "the best interests of the child." The trial court, in its order, implicitly found that the best interests of the two children would be best served by allowing the primary physical custody of the children to rest with Mother. In its order, the court stated, *inter alia:*

8. In reviewing Sec. 452.375.2 RSMo., the Court finds both parties generally equal in the matters to be considered. However, the Respondent prevails in the area of the parent who will give or permit more frequent and meaningful contact with the non-custodial parent. Also, she prevails in providing a continuing relationship with both parents. Petitioner has displayed an intent to shorten or limit the contact with Respondent, were he to remain as custodial parent (factually, not legally). Respondent testified and this Court finds that telephone contact with the children was non-existent for 14 days because Petitioner changed his phone num-

ber and did not provide same to Respondent; that telephone communications to children are unresponded to or curtailed when initiated by the Respondent; also report cards are no longer forwarded by Petitioner to Respondent; also parent teacher conference dates are not given to the Respondent.

■■■■ Father complains that the trial court used an improper standard in making its decision. The trial court examined the statutory factors found in § 452.375.2 [3], the statute used in making an initial determination of custody. As these factors all relate to a decision as to what is in the best interests of a child, there is nothing improper about the trial court in the instant case utilizing them as a method of making a similar determination as to the best interests of a child in the context of a modification action. In matters where the custody of a child is at issue, the welfare of that child is the primary factor. *Wenger v. Wenger*, 876 S.W.2d 735, 743 (Mo.App.1994). The trial court is under an affirmative duty to enter a judgment consistent with the best interests of the child. *Id.* The trial court in the instant case was not required to use these factors in making its decision but is not foreclosed from doing so.

■■■■ Father complains that the trial court's order was against the weight of the evidence and is not supported by substantial evidence. He points to facts supporting his conclusion that the best interests of Gary and Adam would be served by remaining with

him as primary physical custodian. He cites an abundance of cases [4] supporting the proposition that modification is proper where children have been well-established in their surroundings and where the other parent has acquiesced in allowing extended physical custody. These cases would be extremely helpful if the trial court had decided this case differently. However, these cases do not mandate modification in circumstances such as are presented in this case. Moreover, the trial court in this case did not believe that Mother had "acquiesced" in the usual sense of the word, finding that Father had "financially intimidated" Mother. We also remind Father that the trial court's judgment will be affirmed even if the evidence would support another conclusion. *Wild v. Holmes*, 869 S.W.2d 917, 918 (Mo.App.1994).

■■■■ The standard of review in assessing the sufficiency of the evidence calls for us to view the evidence and its inferences in the light most favorable to the order of the trial court. *Lindell v. Coen*, 896 S.W.2d 525, 527 (Mo.App.1995). The trial court found nothing about either parent which had any tendency to disqualify that parent. The court was thus left with the terms of the original agreement, and the issue of the best interest of the children. Examination of the record yields sufficient evidence to support the trial court's order. The trial court could reasonably have believed from the evidence that Father's actions to keep the children from

3. The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;
(2) The wishes of a child as to his custodian;
(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;
(4) The child's adjustment to his home, school, and community;
(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights

shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;
(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(7) The intention of either parent to relocate his residence outside the state; and
(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

4. E.g., *McClain v. Chaffee*, 894 S.W.2d 719 (Mo.App.1995); *Long v. Long*, 771 S.W.2d 837 (Mo.App.1989); *Betterton v. Betterton*, 752 S.W.2d 417 (Mo.App.1988); *Friend v. Jackson*, 714 S.W.2d 953 (Mo.App.1986).

Mother were likely to be repeated, and that such repetition would not be in the best interest of the children. This case is distinguishable from *Sumnicht v. Sackman,* 906 S.W.2d 725 (Mo.App.1995). There the Mother had expressed reluctance to encourage the child's visitation with Father, and yet had always complied with required visitation. The trial court found that Mother's expressed reluctance amounted to a change of circumstances, warranting transfer of the child to Father's sole custody. This court reversed, noting that Mother had always complied with all required visitation and therefore was entitled to the presumption she would continue to comply with the court's visitation orders. That case differs from the one before us. Here, there was evidence that the Father had actually significantly interfered with Mother's scheduled visitation and with her efforts to communicate with the children. There was no evidence presented adverse to Mother which would have justified Father's lack of cooperation with Mother's interest in relating to her children. The evidence is sufficient to support the order of the trial court.

Affirmed.

All concur.