Tresea Ann (Coble) BRECKNER, Respondent/Appellant,

v.

Ricky T. COBLE, Appellant/Respondent.

Nos. 20091, 20138.

Missouri Court of Appeals, Southern District, Division Two.

April 24, 1996.

Douglas W. Greene, III, Twibell, Greene, Johnson & Kizer, Springfield, for appellant/respondent.

Betty A. Pace, Springfield, for respondent/appellant.

PARRISH, Judge.

Both parties appeal the modification of a dissolution of marriage judgment. Ricky Thomas Coble (father) appeals the denial of his request to modify child custody. Tresea Ann Coble Breckner (mother) appeals visitation privileges awarded to paternal grandparents and failure to award child support retroactive to the date father was served with her motion to modify. The appeals were consolidated. This court reverses the modification of child visitation, in part, and remands with directions. In all other respects, the judgment modifying the original dissolution of marriage judgment is affirmed.

## Scope of Review

■ Review of a trial court's determination of a motion to modify is governed by Rule 73.01. *P.L.W. v. T.R.W.*, 890 S.W.2d 688, 690 (Mo.App.1994). Its decision will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.; Aston v. Aston*, 810 S.W.2d 720, 721 (Mo.App.1991).

## No. 20091—Father's Appeal

The parties have two children, Christopher Charles, born November 12, 1981, and Anthony Scott, born July 22, 1983. Mother was awarded custody of both children in the original dissolution proceeding. Father, by his motion to modify, sought custody of Christopher.

Father presented testimony from a psychologist, Dr. Whipple. Dr. Whipple testified that he interviewed Christopher and administered certain psychological tests to him. Dr. Whipple characterized Christopher as "a rather conscientious young man, somewhat guarded, somewhat withdrawn." He found no major incapacitating emotional problems or abnormal psychological disorders.

In interviewing and evaluating Christopher, Dr. Whipple undertook to determine how he perceived his parents. He found that Christopher desired to live with his father. Christopher was living with his mother at the time of the court hearing. Dr. Whipple expressed the opinion that it would be psychologically unhealthy for Christopher to remain in that environment.

Father presents one point in his appeal. He contends the trial court erred in leaving both children in mother's custody "because the trial court failed to consider the wishes of the oldest child [Christopher] as to his custodian." He claims the trial court's determination of custody was not in the best interests of either child.

■ In considering appeals of custody orders, it is presumed that the trial court has studied all the evidence and decided the custody issue in a manner consistent with the best interests of the child. *Cook v. Warren*, 916 S.W.2d 409, 412 (Mo.App.1996). "Great-

er deference is accorded the decision of the trial court in custody cases than in other cases." *Id.*

The trial court states in its Order of Modification, the judgment from which father appeals:

In reaching its decision to leave custody with the Mother, the Court finds that the Mother had showed a consistent and appropriate pattern of discipline; the making and enforcing of rules for the Children to follow; the encouragement and parental guidance for academic achievement of both children; and regular routines established for the children. The Court also considered the lack of discipline and rules established by the Father, his attitude about R rated and violent movies, that he allowed the children to view while in his custody. The Court also finds that the Father has created by his words and conduct unrealistic expectations about the children's college education, a new home, and trips.

■ This court has reviewed the transcript of the testimony given before the trial court. A lengthy reiteration of it is not necessary. There was substantial evidence supporting the trial court's findings with respect to the decision to leave custody of the children with mother.

Mother's involvement with the children's activities was particularly noteworthy with respect to their schooling. Both children have learning disabilities. Testimony of school officials consistently demonstrated diligent efforts of mother to assist and encourage the children to overcome those disabilities, including hiring a tutor on occasion. These efforts have been particularly successful with respect to Christopher. He has been mainstreamed in the school he attends and now makes top grades.

Father's participation and interest in the children's schooling is a marked contrast. He has shown little interest in their progress and has provided no assistance in meeting the children's special educational needs. He refused to contribute to the cost of a tutor to assist Christopher.

■ The fact that father's expert supported father's request to have custody of Christopher is not determinative. The trial court had the opportunity to evaluate the testimony of all witnesses. The weight to be given each witness was for the trial court to determine. It was not required to accept the views expressed by the psychologist who testified on behalf of father. *T.M.K. v. J.W.K.*, 667 S.W.2d 733, 735 (Mo.App.1984); *Wells v. Wells*, 623 S.W.2d 19, 22 (Mo.App.1981).

■ Neither was the trial court required to accede to the wishes with respect to custody expressed by the child.[1] In considering a child's preference with respect to his or her custodian, that preference is " 'followed only if the welfare and interest of the child, as determined by all the evidence, are consistent with that preference.' " *L. v. D.*, 630 S.W.2d 240, 242 (Mo.App.1982), *quoting Kanady v. Kanady*, 527 S.W.2d 704, 707 (Mo.App.1975). *See also, T.C.H. v. K.M.H.*, 784 S.W.2d 281, 285 (Mo.App.1989).

■ A trial court's determination of child custody will not be disturbed on appeal unless the appellate court is firmly convinced that the welfare of the child affected requires a different disposition. *P.L.W. v. T.R.W.*, *supra*. This court is not so convinced.

The record on appeal does not reveal that the trial court's ruling was against the logic of the circumstances presented by the evidence. Its ruling was neither arbitrary nor unreasonable. It did not abuse its discretion in denying father's request for transfer of custody of Christopher. *See In Re Marriage of Patroske*, 888 S.W.2d 374, 383 (Mo.App. 1994); *In Re Marriage of V.A.E. and D.A.E.*, 873 S.W.2d 262, 268 (Mo.App.1994). Father's point on appeal is denied.

### No. 20138—Mother's Appeal

Mother's motion to modify was filed July 15, 1993. It sought increased child support. Father was served with process July 29, 1993. Judgment was entered February 9, 1995, granting her request. The effective date for the increased child support was February 1, 1995.

The trial court's judgment, in addition to awarding mother increased child support, specifies that father is granted "all rights of reasonable visitation." The judgment states that father's visitation rights include specifically identified visitation periods. Father's visitation periods specified for Christopher include:

> Every other weekend from Friday after school, when the paternal Grandparents, Bob and Carol Coble, shall be permitted to pick the child up from school and keep the child until the Father is off work on Saturday afternoon, at which time the Father shall begin his period of visitation with the minor child. The Father shall return the child to the Mother's home at 6:00 p.m. Sunday afternoon.

■ Mother's first point on appeal is directed to the provision in the judgment that provides for Christopher's paternal grandparents to pick him up on designated Fridays and keep him until father is off work on Saturdays. Mother contends this is an award of child visitation to the grandparents; that the trial court erred in ordering the visitation because the grandparents were not parties to the modification proceeding.

There are two statutes related to grandparent visitation with children of parents whose marriage is dissolved, § 452.375.4(3)(a) and § 452.402.[2] Section 452.375.4(3)(a) relates to circumstances in which third party custody or visitation is granted because the parents are "unfit, unsuitable, or unable" to be custodians "or the welfare of the child requires, and it is in the best interests of the child." Before visitation rights can be awarded pursuant to

---

1. This court notes that Christopher was interviewed by the trial judge as permitted by § 452.385, RSMo 1994, but was not asked about his wishes as to which parent he preferred to live with. The assertion that Christopher wanted his father as his custodian is derived from Dr. Whipple's report that was admitted in evidence and Dr. Whipple's testimony.

2. References to statutes are to RSMo1994, the applicable statutes at the time the judgment from which the parties appeal was entered. What was § 452.375.4 in the 1994 supplement was renumbered by reason of 1995 legislation. It became § 452.375.5, RSMo Supp.1995.

§ 452.375.4(3), the grandparents must be made parties to the action.

Section 452.402.1(1) relates to circumstances in which grandparents may seek visitation rights that have previously been denied following a dissolution of the marriage of the grandchild's parents. The grandparents may file a motion to obtain visitation rights by means of modifying the dissolution judgment.

Christopher's paternal grandparents were not made parties to the modification proceedings filed by father and mother; neither did they file a motion to modify the original dissolution judgment as permitted by § 452.402.1(1). If the language in the modification order is construed to award the paternal grandparents visitation rights, it must be reversed.

The language in the judgment provides for the paternal grandparents to pick Christopher up from school on designated Fridays and keep him until father was off work the next day "at which time the Father shall begin his period of visitation." Clearly, father's scheduled visitation does not begin until Saturday. The judgment does not merely afford father the assistance of Christopher's grandparents in transporting the child in order for father to expeditiously exercise his visitation rights. It specifies a visitation or custodial period for the grandparents. It purports to grant them visitation rights.

Mother's first point is well-taken. The part of the judgment that awards grandparent visitation rights must be reversed. The case will be remanded in order for the trial court to assess whether the visitation plan it intended should be revised in view of the elimination of the provision regarding the paternal grandparents.

Mother's second point contends the trial court erred in failing to order increased child support retroactive to the date father was served with process. She appropriately refers this court to § 452.370.6 that permits child support to be modified as to "installments which accrued subsequent to the date of personal service."

"The trial court has discretion to determine the effective date for modified child support and that decision will not be reversed in the absence of a clear abuse." *Anderson v. Anderson,* 861 S.W.2d 796, 802 (Mo.App.1993). This court finds no abuse of discretion in this case.

As discussed in *Glenn v. Francis,* 864 S.W.2d 947, 954 (Mo.App.1993), "The concern is for the children, not the father or mother insofar as financial awards for child support are concerned." Here, as in *Glenn,* the record is silent with respect to the needs of the children for whom the child support would be paid. Mother based her request for increased support solely on Missouri's child support guidelines. Denying the request for increased child support retroactive to the date mother's motion for modification of child support was served on father was not an abuse of the trial court's discretion. Mother's Point II is denied.

### Dispositions

The award of custody of both children to mother is affirmed. The award of increased child support effective February 1, 1995, is affirmed. The child visitation schedule is reversed insofar as it awards periods of visitation with Christopher to grandparents who are not parties to this proceeding. The case is remanded for review of father's visitation schedule with Christopher and for determination, as is consistent with this opinion, of whether Christopher's best interests require further revision of that schedule. In all other respects the judgment is affirmed.

SHRUM, C.J., and CROW, J., concur.